IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 16-cv-00698-RPM

ANTHONY EGET,

      Plaintiff,

v.

CORRECTIONS CORPORATION OF AMERICA, a Maryland corporation;
CORRECTIONAL HEALTH PARTNERS, a Colorado limited liability company;

      Defendants.

_____

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT
_____

On February 11, 2014, Anthony Eget complained to the staff of the Adams
County jail that he had pain in his right wrist from tight handcuffs on him during a court
appearance earlier that day. He was scheduled to see a hand specialist on March 24,
2014. That did not happen because he was transferred to the Crowley County
Correctional Facility (CCCF) on that day. The CCCF is managed and operated by
Correction Corporation of America (CCA) under contracts with the Colorado Department
of Corrections (CDOC) and Crowley County. CCA is responsible for the medical care of
the inmates and has a medical staff at the institution, including a nurse practitioner,
Lynne Cappellucci and a medical doctor, Susan Tiona, M.D.

The CDOC has a contract with Correctional Health Partners, LLC (CHP) to
review pre-authorization requests for inmates seeking medical care outside of the prison
system. CHP acts as an administrator to evaluate the basis for and to determine the
clinical medical necessity of requests for inmates to be evaluated or treated by health
care providers outside CDOC's internal medical system.

On April 11, 2014, Eget reported to nurse practitioner Cappellucci that he had numbness in the fourth and fifth fingers of his right hand and could not use the hand even to brush his teeth. The nurse assessed him as having a possible tendon injury and right ulnar nerve "decreased sensate." She requested CHP to refer him to Charles Kessler, M.D., a plastic and reconstruction surgeon. That request was denied as not medically necessary by Stephen Krebs, M.D., a physician employed by CHP in April.

Another request was sent by Cappellucci on June 4, 2014, for an outside nerve study, electromyogram (EMG) as a result of a new objective finding of an indentation between the thumb and index finger. CHP approved that request on June 17, 2014.

On August 13, 2014, Ashakiran Sunku, M.D., performed the nerve study. The result was a finding of severe right ulnar neuropathy across the right elbow and median neuropathies (moderate right, mild left) at the wrists (carpal tunnel syndrome).

On September 2, 2014, Cappellucci reviewed the EMG results with Eget and on September 5 she requested CHP approval for referral to an outside neurology specialist for a consultation.

CHP approved that request on September 26, 2014. Through some error Eget was scheduled for a second EMG rather than a consultation with a specialist. Dr. Gary Cohen did a second EMG on November 13, 2014, finding a near total loss of right ulnar motor and sensory nerves at the right wrist.

On December 5, 2014, Dr. Susan Tiona, a physician at CCCF, submitted an urgent-priority pre-authorization request to CHP for referral to Dr. Kessler for a consultation to see if any surgical intervention could help Eget. CHP approved the request on December 8.

Dr. Kessler saw Eget on December 22, 2014. Eget said he began to notice progressive loss of strength in his right hand in June 2014 and believed that his injury began with the February 11, 2014, handcuffing incident.

A request from Dr. Kessler for CHP approval for surgery on the right wrist was submitted on December 22, 2014, and approved on January 6, 2015.

Dr. Kessler performed neuroplasty decompression surgery of Eget's ulnar nerve at the right wrist and right carpal tunnel release on January 28, 2015.

Dr. Kessler saw Eget for a post-operative visit on February 17, 2015, and found near normal active and passive range of motion of the right hand. He reported that Eget stated he still had weakness in the right hand, but the symptoms of tingling and numbness in the right-hand ring and little finger had resolved.

Eget filed this civil action for damages under 42 U.S.C. § 1983 asserting a violation of the Eighth Amendment's protection from cruel and unusual punishment by the failure to provide prompt medical care in reckless disregard of a substantial risk of serious harm from his worsening condition.

The defendants have moved for summary judgment of dismissal.

The initial defense is that Eget failed to exhaust the administrative remedies available to him as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 214-16 (2007). "An inmate who begins the grievance process but does not complete it is barred from pursuing a [federal] claim under the PLRA for failure to exhaust his administrative remedies." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112

(10th Cir. 2007) (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir.2002)). Substantial compliance is insufficient. *Id.*

Eget filed a kite[1] when he first arrived at CCCF on March 24, 2014, He was seen by nurse Capellucci on March 26, 2014, who ordered an X-ray of his hand which showed an old injury to the little finger.

A kite on April 3, 2014, resulted in the April 11, 2014, observations by Capellucci. Many other kites were sent with Eget continually complaining of pain and inability to use his right hand.

Eget submitted an informal grievance in September 2014. He asserts that he filed a Step 1 formal grievance on December 15, 2014, but it does not appear in the electronic grievance database. The CDOC Grievance Procedure requires Step 2 and Step 3 grievances.

Eget contends that no one at CCCF instructed him about the Grievance Procedure and there was no response to the Step 1 filing. Under the grievance procedures a formal grievance must be filed within 30 days of the inmate's awareness of the facts giving rise to the grievance and if there is no response to the Step 1 grievance then Step 2 must be filed within 5 calendar days after the date the response was due. The filing plaintiff asserts he made shows that he was aware of the procedure. There is no evidence that he pursued a formal grievance beyond the claimed Step 1 filing.

The failure to exhaust the administrative remedies ordinarily requires dismissal without prejudice where the failure is a "temporary, curable" flaw. *Steele v. Fed. Bureau*

---

[1] A "kite" is a request for sick call.

*of Prisons,* 355 F.3d 1204, 1212–13 (10th Cir.2003). When the failure is based on procedural grounds such as untimeliness, applicable here, the case may be dismissed with prejudice. *See Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006), *overruled on other grounds by Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).

The seriousness of the allegations warrants this Court to proceed to address the merits of the claims.

The defendants deny that there was a violation of the Eighth Amendment.

A cognizable claim under the Eighth Amendment for failure to provide adequate medical care requires allegation and proof of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The test for deliberate indifference has two prongs: (1) an objective component considering whether the prisoner's need was "sufficiently serious"; and (2) a subjective component considering whether the defendant had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component is not satisfied "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837).

The sole involvement of CHP was Dr. Krebs' denial of the first request for pre-authorization in April 2016. The plaintiff has failed to produce any admissible evidence that Dr. Krebs was aware and disregarded any facts from which he could infer that Eget was at substantial risk of serious medical harm. CHP produced an opinion of its retained witness, Dr. Mordick, that Dr. Kreb's denial was reasonable under the circumstances

and did not unreasonably delay medical care.

CCA denies that any of its employees met the subjective component by being aware of facts from which a fair inference could be drawn that a substantial risk of serious harm existed and then acting or failing to act with deliberate indifference to that risk. The plaintiff has not contended that Nurse Cappellucci acted improperly in her treatment of him and her requests to CHP. She left the CCCF in October 2014.

The scheduling error that sent Eget to Dr. Cohen for a second EMG has not been shown to have been either a deliberate or reckless act.

CCA contends that there is no evidence that the condition that was repaired surgically was caused by the asserted handcuff injury and cites numerous prior injuries and medical records showing deterioration. The plaintiff rightly responds that whether the handcuffs caused his condition is not relevant. The fact that he was in pain and could not function with the use of his right hand during the eleven months between his arrival at CCCF and the surgery would be sufficient for a claim for damages if the other elements of liability were present.

Liability based on the conduct of any individual requires a showing of a subjective intent of deliberate indifference to a serious medical need and the plaintiff has failed to identify any employee of either defendant who had such intent. He voluntarily dismissed Judith Brizendine and Lynne Cappellucci as defendants after naming them in his complaint.

The final and most dispositive ground for dismissal is that the plaintiff cannot show that the corporate defendants would be liable even if there was an Eighth Amendment violation by one or more employee.

There is no respondeat superior liability under Section 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The plaintiff must show a direct causal connection between some corporate policy or practice and the constitutional deprivation. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690 (1978); *Berry v. City of Muskogee*, *Okl.,* 900 F.2d 1489, 1499 (10th Cir. 1990). This doctrine extends to private § 1983 defendants. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003).

Eget asserts that under the contract with CDOC, CHP received 50% of CDOC's cost savings in medical care and that it is common knowledge that CCA understaffs its private prisons and provides inadequate care. The plaintiff has provided no admissible evidence or supporting law to support these assertions of a policy or practice which led to his injury.

The defendants' motions for summary judgment are granted. The Clerk will enter judgment for the defendants dismissing all claims and awarding costs.

DATED:  January 17, 2018

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge